

**HELEN F. DALTON & ASSOCIATES, P.C.**
ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

January 21, 2022

**Via ECF**
The Honorable District Judge Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Velasquez, et al. v. NYC Trucking, Inc., et al.**
   **20-CV-5229 (VEC)**

Dear Judge Caproni:

Our office represents Dario Benito Velasquez ("Velasquez") and Celerino Mata Primitivo ("Primitivo") (collectively, "the Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for NYC Trucking Inc. d/b/a NYC Produce and Victoriano Bravo (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached at after multiple Court-annexed mediations through the SDNY Mediation Program before a Court-appointed neutral.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. Separately, Plaintiffs' counsel addresses their request for attorneys' fees and their fee arrangement with Plaintiffs.

Lastly, in light of the instant motion, the parties respectfully request that the conference scheduled for January 26, 2022 be adjourned *sine die*.

**I.   The Wolinsky Factors**

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiffs' range of possible recovery:**

**a. Plaintiffs' Position**

Plaintiffs are former employees of the Defendants who worked at NYC Produce, located at 532 Bryant Avenue, Bronx, New York 10474, during the respective time periods alleged below. Plaintiffs commenced this action on July 8, 2020 to recover damages against Defendants for overtime wages, and minimum wages, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and spread of hour compensation in violation of the NYLL, as well as statutory penalties resulting for WTPA violations under the NYLL for failure to provide Plaintiffs with written wage notices and failure to provide Plaintiffs with wage statements upon each payment of their wages, as required by NYLL §195(1) and (3).

<u>Plaintiff Velasquez</u>

Plaintiff Velasquez alleged that he was employed by the Defendants to work as a stocker and cleaner from in or around June 2018 until in or around January 2020. Plaintiff Velasquez alleged that he regularly worked approximately sixty (60) hours or more per week throughout his employment by the Defendants.

Plaintiff Velasquez alleged that he was paid by the Defendants a flat weekly salary at a rate of $500.00 per week from in or around June 2018 until in or around December 2018, and $525.00 per week from in or around January 2019 until in or around January 2020.

As such, Plaintiff Velasquez alleged that he was not compensated at time-and-a-half his calculated hourly rate of pay for approximately 20 hours per week for approximately one-and-a-half years of employment. Plaintiff Velasquez also alleged that his calculated hourly rate of pay fell below the applicable minimum wage and was entitled to the difference between the minimum wage rate and his rate of pay received.

<u>Plaintiff Primitivo</u>

Plaintiff Primitivo alleged that he was employed by the Defendants to work as a stocker and cleaner from in or around May 2018 until in or around January 2019. Plaintiff Primitivo alleged that he regularly worked approximately seventy-two (72) hours or more per week throughout his employment by the Defendants.

Plaintiff Primitivo alleged that he was paid by the Defendants a flat weekly salary at a rate of $400.00 per week during his employment.

As such, Plaintiff Primitivo alleged that he was not compensated at time-and-a-half his calculated hourly rate of pay for approximately 32 hours per week for approximately eight months of employment. Plaintiff Primitivo also alleged that his calculated hourly rate of pay fell below the applicable minimum wage and was entitled to the difference between the minimum wage rate and his rate of pay received.

<u>Plaintiffs' Reasonable Range of Recovery</u>

Plaintiffs initially alleged $67,000.00 in unpaid overtime wages and minimum wages. During the parties' mediation sessions, Defendants disclosed records which disputed Plaintiffs' allegation as to the dates of their employment, amounts paid and hours worked. In particular, Defendants disputed the length of Plaintiff Primitivo's employment as their records indicated that he was only employed for a number of weeks. Plaintiffs disagreed with the accuracy and completeness of these records, but understood the potential value of such records as well as the factual disputes that existed as to their underlying claims.

Based on our review of the documents, our negotiations within the mediations held and conversations with the Court-appointed mediator, we believed that if Plaintiff could have reasonably established at least $40,000.00 of their alleged unpaid wages. If Plaintiffs were also successful in establishing their claims for liquidated damages and statutory penalties, they could have reasonably recovered up to $100,000.00. As such, Plaintiffs believe their reasonable range of recovery was $0.00 to $100,000.00.

**b. The Settlement Amount is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $60,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after multiple mediations before a Court-appointed neutral. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs, the pay received by Plaintiffs and the dates of Plaintiffs' employment, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows Plaintiffs to recover a substantial sum of their alleged unpaid wages – a figure strongly contested by Defendants – and takes into account both the risks of obtaining a judgment at trial and whether Plaintiff would be able to collect on any such judgment post-trial. The settlement also reflects the economic realities of the Defendants, which factored into Plaintiffs' decision to resolve this matter at the agreed-upon amount.

2. **The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

The settlement still enables the parties to avoid the anticipated burdens and expenses of formal paper discovery, including exchanging interrogatory and document demands and responses on each other, as well as depositions and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least three party depositions and an undetermined number of non-party depositions. The parties also would have also likely engaged in pre-trial motion practice. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted two or three days.

Plaintiffs would have incurred expenses preparing exhibits and a hiring court-licensed translator for trial in addition to conducting the trial. Defendants would have also been required to dedicate significant time and money toward a trial which would have served as a distraction to operating their business. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3. **The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that he could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiffs could have obtained a judgment against Defendants at trial on which they could not collect. The seriousness of this risk favored a guaranteed payment through a Court-approved settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages, liquidated damages and penalties to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys' fees.

4. **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement discussion through a Court-appointed mediator. The first mediation was held on November 2, 2021 and the second mediation was held on December 2, 2021.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

Further, the terms of the Settlement Agreement were the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

**5. The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

## II.  Requested Attorneys' Fees and Distribution to Plaintiff

The parties agreed to a global settlement of $60,000.00. If the Agreement is approved by the Court, Plaintiffs will recover $39,648.00 after requested attorneys' fees and reimbursement of expenses. Each Plaintiff will recover an amount proportional to his calculation of damages, which consider each Plaintiff's length of employment, alleged hours worked and alleged pay received. The allocations also consider the risk associated with each client's claims and the records provided by Defendants. The settlement allocations are included in Exhibit A of the Settlement Agreement.

Plaintiffs' counsel respectfully requests $528.00 for identifiable expenses, which include:
- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on all Defendants: $128.00

Plaintiff's counsel respectfully requests one-third of the settlement less their expenses ($59,472.00), or $19,824.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $20,352.00.

The settlement as broken down into its component parts is as follows:

**Settlement Amount:** $60,000.00
**Attorneys' Expenses:** $528.00
**Net Settlement Amount:** $59,472.00 ($60,000.00 - $528.00)
**Requested Attorneys' Fees:** $19,824.00 ($59,472.00 / 3)
**Total payable to Attorneys:** $20,352.00 ($19,824.00 + $528.00)
**Total payable to Plaintiffs:** $39,648.00 ($60,000.00 - $20,352.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).  Courts in this District typically

approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their client throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

Furthermore, in support of this fee request, Plaintiffs' counsel's contemporaneous billing records, attorney qualifications and lodestar calculation of attorneys' fees are attached hereto as **Exhibit 2**.

### III. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of negotiations at multiple Court-annexed mediations and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss this action. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.